IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 99-cv-01923-JLK

CARRIE ANN LUCAS,
DEBBIE LANE,
JULIE REISKIN,
EDWARD MUEGGE,
ROBERT G. GEYER,
STACY BERLOFF,
JEAN RYAN,
JAN CAMPBELL,
      on behalf of themselves and all others similarly situated,

                            Plaintiffs,

v.

KMART CORPORATION,

                            Defendant.

---

## ORDER GRANTING JOINT MOTION FOR PRELIMINARY
## APPROVAL OF SETTLEMENT AGREEMENT

---

      Plaintiffs Carrie Ann Lucas, Debbie Lane, Julie Reiskin, Edward Muegge, Robert Geyer,

Stacy Berloff, Jean Ryan and Jan Campbell, and Defendant Kmart Corporation ("Kmart"),

jointly moved the Court for an Order:  (1) preliminarily approving the proposed settlement in

this case as fair, reasonable and adequate; (2) finding that the proposed plan to provide notice of

the settlement to the class and the proposed forms of notice satisfy the requirements of due

process and F.R.C.P. 23; (3) preliminarily enjoining class members and sub-class members from

asserting any of the claims to be released pursuant to the proposed settlement; and (4) scheduling

a Fairness Hearing on this proposed settlement for 10:00 a.m. on July 27, 2006.. After

considering the parties' brief and applicable law, the Court will grant the motion.

**Applicable Law, Facts and Procedural History**

**I.      Applicable Statutes**

Title III of the ADA prohibits disability discrimination in places of public

accommodation.  42 U.S.C. § 12181 et seq.  The specific design criteria required by Title III are

set forth in the Department of Justice Standards for Accessible Design ("Standards").  28 C.F.R.

pt. 36, app A.  Title III is enforceable through a private right of action for injunctive relief, but

Title III does not provide a damages remedy for private plaintiffs.  42 U.S.C. § 12188(a)(1) &

(2).  Prevailing plaintiffs are, however, entitled to attorneys' fees.  Id., § 12205.  Under

California law, plaintiffs may also seek injunctive relief to require compliance with California's

access standards, set forth in Title 24 of the California Code of Regulations.  See, e.g., Cal. Civ.

Code §§ 51(b), 52(c)(3), 54(a), 54.3(b); People ex rel. Deukmejian v. CHE, Inc., 197 Cal. Rptr.

484, 491 (Cal. Ct. App. 1983).

California, Colorado, Hawai'i, Massachusetts, New York, Oregon and Texas (together,

the "Sub-Class States") each has a statute pursuant to which a prevailing plaintiff in a disability

discrimination action against a public accommodation can be awarded damages in an amount

specified by statute without proving actual damages ("Statutory Minimum Damages").  The

Statutory Minimum Damages recoverable in each state are as follows:  California ($4,000);[1]

---

[1]      Cal. Civ. Code § 52(a).  Minimum damages of $1,000 are recoverable pursuant to Cal. Civ. Code § 54.3.

2

Colorado ($50);[2] Hawaii ($1,000);[3] Massachusetts ($300);[4] New York ($100);[5] Oregon ($200);[6] and Texas ($200).[7]

## II.     History of the Litigation and Negotiation

This action was filed in 1999.  Between the spring of 2000 and January 2002, the parties conducted extensive discovery, including the production of over 100,000 pages of documents and more than 50 depositions.  Plaintiffs filed their motion for class certification in July 2001 and there was extensive briefing on that issue.  On January 4, 2002, Kmart declared bankruptcy. During the pendency of Kmart's bankruptcy, plaintiffs attempted unsuccessfully to lift the bankruptcy stay as it applied to this case.  After Kmart emerged from bankruptcy on May 6, 2003, the parties appeared before this Court to address whether this matter had been discharged in bankruptcy.  This Court ruled that the matter could proceed.

On July 13, 2005, after additional briefing, the Court granted plaintiffs' motion for class certification and certified a nationwide class of individuals who use wheelchairs or scooters and who shop at Kmart stores (the "Nationwide Class").  Kmart immediately sought and obtained permission from the Tenth Circuit to appeal that decision under F.R.C.P. 23(f).  As a result of

---

[2]     Colo. Rev. Stat. § 24-34-602.

[3]     Hawaii Statutes § 489-7.5.

[4]     M.G.L.A. ch. 272 § 98.

[5]     N.Y. Civ. R. §§ 40-c, 40-d; N.Y. Exec. § 296(2)(a).

[6]     O.R.S. § 659A.885.

[7]     Tex. Hum. Res. Code §§ 121.003; 121.004.

the settlement agreement presently before the Court, briefing before the Tenth Circuit was not completed.

In August 2005, the parties initiated settlement negotiations that have yielded the settlement agreement submitted to the Court.  These settlement negotiations were ongoing from August 2005 to February 2006.  As part of those negotiations, Kmart provided plaintiffs with additional documents relating to topics addressed during the negotiations and made arrangements for plaintiffs' expert to survey two Kmart stores.  In addition to extensive telephone and email conversations, the parties engaged in two multi-day, in-person negotiating sessions along with other shorter meetings.

The parties' initial negotiations concerned injunctive relief.  The parties reached agreement concerning a large part of the injunctive relief before turning to damages, and the negotiations concerning damages and injunctive relief were kept completely separate from one another.  The parties did not discuss attorneys' fees until there was substantial agreement on all parts of the injunctive and damages settlement.  Both parties have been represented throughout these negotiations by counsel with extensive experience in disability rights and class action litigation.

Once the settlement was almost finalized, class counsel provided the draft settlement agreement to prominent members of the disability rights community across the country.  The parties incorporated into the settlement agreement several suggestions that they received through this process.

## IIII.   Summary of the Settlement

In summary, under the proposed settlement agreement:

- Kmart will survey and, with few exceptions, bring all of its stores into compliance with the Department of Justice Standards for Accessible Design and all of its stores in California into compliance with Title 24 of the California Code of Regulations within approximately seven and a half years (Agreement ¶ 6);

- Kmart will ensure that all merchandise on "fixed displays" -- including gondolas, perimeter walls, and "I" walls -- as well as large appliances, drive aisle displays and sidewalk displays will be on an accessible route of at least 36 inches (Agreement ¶¶ 12.6.1-.3, 12.6.8);

- Kmart will ensure that all accessible restrooms and fitting rooms will be on an accessible route and maintained free and clear of obstructions (Agreement ¶¶ 12.6.5-.6);

- Kmart will ensure that one accessible check-out lane is open at all times the store is open (Agreement ¶ 12.5);

- Kmart will, in all but 10% of its stores, provide a path of at least 32 inches to at least one side of moveable apparel displays in 80% of floor space occupied by moveable displays as well as a distance of 32 inches between certain types of moveable apparel displays when they are placed next to one another (Agreement ¶¶ 12.1-.2);

5

- Kmart will implement a customer service system for access to moveable apparel displays and furniture displays under which customers with disabilities who use wheelchairs or scooters for mobility will have the option of requesting assistance or requesting that Kmart provide them with a two-way communications device so that they may summon assistance when they need it (Agreement ¶ 12.3);

- Kmart will amend its policy and training materials to implement these new policies (Agreement ¶ 13);

- Compliance will be monitored using "mystery shoppers," as well as customer feedback through the Internet, a toll-free phone line, and in-store forms (Agreement ¶¶ 14.3-.4);

- The Nationwide Class will release claims for injunctive relief under Title III of the ADA, under state statutes that incorporate or are equivalent to Title III, and under California law through the end of the term of the settlement, which is expected to be approximately 2014 (Agreement ¶ 26.1);

- Kmart will establish a fund (the "Damages Sub-Class Fund") in the amount of $13,000,000 (consisting of $8,000,000 in cash and $5,000,000 in gift cards redeemable at face value) from which members of a Damages Sub-Class that plaintiffs have requested the Court to preliminarily certify for settlement purposes concurrently with the requested preliminary approval of this settlement are eligible to recover (Agreement ¶ 15.1.1);

- The Damages Sub-Class Fund will be allocated among the Sub-Class States based on a formula, described in detail below, that reflects the number of Kmart Stores in each Sub-Class State, and the Statutory Minimum Damages recoverable in each Sub-Class State (Agreement ¶ 15.5.2);

- For each qualifying visit to a Kmart store, a member of the Sub-Class may recover up to the Statutory Minimum Damages recoverable in the Sub-Class State in which he or she shopped, and the maximum number of qualifying visits for which a Sub-Class member may recover is two (Agreement ¶ 15.5.3.3);

- Kmart will pay damages in the amount of $10,000 each to the three original named plaintiffs, and $1,000 each to the six named plaintiffs of the proposed damages subclass (Agreement ¶ 15.2);

- The majority of any funds remaining in the Damages Sub-Class Fund after the claims period will be given to specified non-profit entities that advocate for the rights of persons with disabilities (Agreement ¶ 15.6);

- Members of the Sub-Class have the right to opt out of the damages provisions of the Settlement Agreement, but members of the Class and Sub-Class cannot opt out of the injunctive provisions (Agreement ¶ 16);

- In addition to releasing claims for injunctive relief under Title III, equivalent state statutes, and California law, Sub-Class members will release claims for Statutory Minimum Damages under the laws of the seven Sub-Class States through the end

of the term of the Agreement, but will not release claims for any other damages (Agreement ¶ 26.2);

- No member of the Nationwide Class will release damages claims with respect to the laws of any state other than those of the Sub-Class States (Agreement ¶ 26.2);

- Notice will be provided to the class in the manner set forth below;

- Kmart will pay attorneys' fees up to the date of final approval in the amount of $3,250,000, subject to Court approval, and will pay class counsel additional reasonable fees in the future for work that they do during the term of the Agreement implementing and assuring compliance with the Agreement (Agreement ¶ 20.2); and

- This Court would retain continuing jurisdiction throughout the term of the Agreement to interpret and enforce the Agreement (Agreement ¶ 35).

## DISCUSSION

### I.    The Agreement is Granted Preliminary Approval.

The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing.  See, e.g., Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982); see also 4 Robert Newberg, Newberg on Class Actions, § 11:25 at 38 (4th ed. 2002) (hereinafter "Newberg").  The Court finds that there is no such reason here.

8

Under F.R.C.P. 23(e)(1)(C), a class action settlement must be "fair, reasonable and adequate." In the Tenth Circuit, the following factors are to be analyzed in determining whether this standard is met:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002). The proposed settlement meets each of these four prongs.

      A.     The Agreement was Fairly and Honestly Negotiated.

There are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length.

First, the parties to this litigation have "vigorously advocated their respective positions throughout the pendency of the case." See Wilkerson v. Martin Marietta Corp., 171 F.R.D. 273, 284 (D. Colo. 1997). This case has been litigated over the course of six years, during which time both parties engaged in extensive written and deposition discovery, filed a number of contested discovery motions, and filed more than a dozen briefs related to class certification. The settlement agreement itself took six months to negotiate, and came only after several previous attempts at negotiating a settlement had failed. There have been multiple meetings and both sides have been represented by multiple counsel with expertise on the ADA and complex class action litigation.

Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.  See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir.), cert. denied sub nom., Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc., 125 S. Ct. 2277 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation, Third § 30.42 (1995))).

The fact that the parties did not discuss damages until they had made substantial progress on the injunctive issues, and did not discuss attorneys' fees until all other issues were virtually finalized, is also indicative of a fair and arm's-length process.  See, e.g., Manual for Complex Litig., Fourth § 21.7 at 335 (2004) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable.").

     B.    Serious Questions of Law and Fact Exist.

Although it is not the role of the Court at this stage of the litigation to evaluate the merits, Wilkerson, 171 F.R.D. at 284, it is clear that the parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated.

For example, Kmart argued that plaintiffs' claims were discharged through its bankruptcy.  Although the Court rejected that argument, Kmart could appeal this issue, argue that plaintiffs' claims should have been dismissed, and potentially wipe out any successful result

that the plaintiffs might achieve.  Similarly, the Tenth Circuit granted interlocutory appeal of the

decision certifying the Nationwide Class in this case.  If this case were litigated, the Tenth

Circuit could reverse or modify this Court's certification decision.

There is also a serious disagreement between the parties concerning the legal standards

applicable to stores built before January 26, 1993.  With respect to those stores, Kmart contends

that it was required to make only those changes that were "readily achievable" under 42 U.S.C.

§ 12182(b)(2)(A)(iv).  Plaintiffs disagree, arguing that, pursuant to 42 U.S.C. § 12183(a)(2),

Kmart was required to bring those stores into compliance with the Department of Justice

Standards for Accessible Design.  There are numerous contested factual issues that relate to this

point.

The question of access to merchandise on moveable displays was also hotly contested.

Plaintiffs took the position that all such merchandise was required to be on an accessible route of

at least 36 inches.  See Standards § 4.1.3(12)(b).  Defendants argued that the case law provided

that there was no such requirement.  See, e.g., Colorado Cross-Disability Coalition v. Too

(Delaware), Inc., 344 F. Supp. 2d 707, 715 (D. Colo. 2004); Lieber v. Macy's West, Inc., 80 F.

Supp. 2d 1065, 1077 (N.D. Cal.1999).

It is thus clear that there were numerous factual and legal questions yet to be addressed in

this litigation that could have had a serious impact on the results for either side.

C.      The Value of an Immediate Recovery Outweighs the Mere Possibility
        of Future Relief after Protracted and Expensive Litigation.

If this case were to be litigated, in all probability it would be many years before it was

resolved.  The appeal of this Court's class certification decision alone could take a year.  And if

this Court's decision were upheld, then the parties would potentially be faced with the possibility of surveying each of Kmart's stores so that disputed factual issues could be resolved. By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief.  For example, pursuant to the settlement agreement:

- Kmart will survey each of its stores in the United States, Puerto Rico, Guam, and the Virgin Islands using surveyors trained by Jim Terry, a nationally-known expert in ADA compliance.

- With very few exceptions, architectural elements that are found through the survey to be out of compliance with the Standards will be brought into compliance.  As part of the settlement, Kmart has agreed not to assert the readily-achievable defense under the ADA during this process.  See 42 U.S.C. § 12182(b)(2)(A)(iv).

- Kmart will put in place policies to ensure that its stores are accessible to class members, including, for example, making sure than an accessible check-out lane is open, that all merchandise on fixed displays is on an accessible path of travel, that Kmart employees are available to assist class members in accessing moveable apparel displays and furniture displays, and that restrooms and fitting rooms are accessible.

The settlement agreement also provides for substantial damages for members of the proposed Damages Sub-Class.  The settlement establishes a $13,000,000 fund from which members of the sub-class may recover.  In return, members of the sub-class are releasing only

their claims for Statutory Minimum Damages and not their claims for actual damages.  See, e.g.,

Bowling v. Pfizer, Inc., 143 F.R.D. 141, 170 (S.D. Ohio 1992) (approving class action settlement

in part because of limited nature of damages release, such that class members retained most of

their rights).

      D.      The Judgment of the Parties That the Settlement Is Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable

weight."  Marcus v. Kansas Dept. of Revenue, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002).

Here, the parties' counsel -- among whom are attorneys with substantial experience in complex

class action litigation and disability class actions -- unanimously support this settlement.

      E.      Allocation of the Damages Sub-Class Fund.

The Court has also considered whether the distribution plan contained in the settlement is

fair, reasonable, and adequate.  See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 205

F.R.D. 369, 381 (D.D.C. 2002).  The Court finds that it is.

"Allocation formulas . . . are recognized as an appropriate means to reflect the

comparative strengths and values of different categories of the claim. . . . An allocation formula

need only have a reasonable, rational basis, particularly if recommended by 'experienced and

competent' class counsel."  In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 429-

30 (S.D.N.Y. 2001) (citations omitted); see also Maley v. Del Global Techs. Corp., 186 F. Supp.

2d 358, 367 (S.D.N.Y. 2002) (same).

In this case, the settlement provides compensation for the release of claims for Statutory Minimum Damages under the laws of the seven Sub-Class States.  Two factors affect the relative strength and value of the claims among these states.

First, the Statutory Minimum Damages that may be recovered differ among the states, from $50 in Colorado to $4,000 in California.

Second, the number of class members differs among the states.  States with a greater number of class members who encountered barriers at Kmart stores should receive a larger portion of the damages.  There is no way to determine the precise number of class members who encountered barriers in each state.  As a reasonable approximation,[8] the parties have used the number of Kmart stores in each state, based on the common-sense assumption that the greater the number of Kmart stores in a state, the greater the number of class members who have encountered barriers in that state.

The allocation formula agreed upon by the parties is as follows:  Each Sub-Class State is assigned a "Factorial," which is the product of the number of Kmart Stores (including any stores that were open at any time during which damages are recoverable) in that state times the Statutory Minimum Damages recoverable in the state.  For example, the California Factorial is 520,000, which is the product of 130 (the number of California Kmart Stores) and 4,000 (the Statutory Minimum Damages recoverable in California).

---

[8]     In a class action settlement, "damages need not be calculated with precision in determining a plan of allocation for settlement proceeds; the only requirement is that the allocation be fair and reasonable."  In re Veritas Software Corp. Securities Litigation, No. C-03-0283 MMC, 2005 WL 3096079, at *7 (N.D. Cal. Nov 15, 2005).

The percentage of the Damages Sub-Class Fund allocated to a Sub-Class State is determined by dividing that state's Factorial by the combined sum of the Factorials of all Sub-Class States.

By allocating the Damages Sub-Class Fund based on the Statutory Minimum Damages recoverable in each state, and by the number of Kmart stores in each state, the formula has a "reasonable, rational basis," and is recommended by experienced, competent counsel.  Thus the allocation formula satisfies F.R.C.P. 23.  See In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d at 429-30.

For the reasons set forth above, the Court grants preliminary approval of the proposed settlement and preliminarily finds that it is fair, reasonable and adequate.

II.     **The Proposed Notice Satisfies the Requirements of Due Process and F.R.C.P. 23.**

The Court also finds that the proposed notice program for this settlement satisfies the requirement of F.R.C.P. 23 and due process and approves the three forms of notice proposed by the parties.  As part of the preliminary approval process, plaintiffs have asked the Court to preliminarily certify the Damages Settlement Sub-Class for settlement purposes under both F.R.C.P. 23(b)(2) and 23(b)(3) and the Court has now done so.  Because the Court has certified the Sub-Class under F.R.C.P. 23(b)(3), F.R.C.P. 23(c)(2)(B) requires that the notice of the settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."[9]

---

[9]     The Nationwide Class was certified under F.R.C.P. 23(b)(2) and only seeks injunctive relief.  With respect to this class, extensive notice of the proposed settlement is not necessary.  See F.R.C.P. 23(d).  Nevertheless, the notice program proposed by the parties and

15

"The hallmark of the notice inquiry . . . is reasonableness." Sollenbarger v. Mountain States Telephone and Telegraph Co., 121 F.R.D. 417, 436 (D.N.M. 1988).  Unlike many class action settlements, there is no readily accessible list of the potential members of the class or sub-class here.  And it would likely take months of effort and huge expenditure to create such a list.  Under such circumstances, the Court finds that individual notice is not required.  Id. at 437 (publication notice sufficient to subgroup of class when efforts required for creating list of individuals would be excessive under the circumstances); Moore's Federal Practice 3d § 23.103[2][b], at 23-390.  The parties nevertheless propose to mail approximately two hundred thousand notices, and perhaps more, directly to individuals who use wheelchairs (and therefore are potential members of the Class and the Sub-Class), the names of whom they are going to obtain by purchasing proprietary marketing lists.  The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).

The parties propose to supplement the individual notices with the following extensive notice program, which the Court approves and holds will satisfy the requirements of F.R.C.P. 23 and due process:

(1)     Publishing the summary notice in various nationwide publications, currently contemplated to be Parade, USA Weekend, People, Reader's Digest, People en Espanol, and Vista.  See Moore's Federal Practice 3d § 23.102[3][b], at 23-384 ("[p]ublication of notice is

---

approved by the Court will provide extensive notice of the entire settlement, not just those aspects of it that relate to the Sub-Class, to the Nationwide Class.

often the best notice practicable for class members who cannot be identified or located specifically through reasonable efforts"); 7 Newberg, § 22:85 at 368 (when class members cannot be identified through reasonable efforts, courts have usually required a combination of first-class mailed notice to the identifiable members and publication in one or more publications).

(2)     Publishing the summary notice in several leading publications targeted at individuals who use wheelchairs or scooters:  New Mobility, Paraplegia News, and Sports N' Spokes.  See, e.g., Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1304 n.2 (9th Cir. 1990) (court directed notice to publications that class members would be more likely to read).

(3)     Mailing the notice to more than 500 organizations focused on people with disabilities, including organizations of paralyzed veterans, individuals with spinal cord injuries and individuals with cerebral palsy, and advocacy organizations for individuals with disabilities.

(4)     Mailing the notice to all individuals who have contacted Class Counsel about the issues raised in this litigation.

(5)     Posting a one-page version of the summary notice at all Kmart stores.

(6)     Providing a link to the settlement notice on Kmart's website.

The parties inform the Court that this notice program is expected to cost upwards of $1 million.  The Court finds this extensive proposed notice program to be more than adequate and approves it as the "best notice practicable under the circumstances" and consistent with the requirements of F.R.C.P. 23 and due process.

17

The Court also approves the three forms of proposed notice submitted by the parties -- a long notice (Exhibit F to the Joint Motion for Preliminary Approval of Settlement Agreement and for Fairness Hearing ("Joint Motion"), a summary form for publication (Exhibit G to the Joint Motion), and a summary form for posting in stores (Exhibit H to the Joint Motion) -- or notices substantially similar thereto as being consistent with the requirements of F.R.C.P. 23(c)(2)(B) and due process.

The Court therefore holds that the requirements of due process and F.R.C.P. 23 will be satisfied if, on or before May 8, 2006, which shall be the Notice Deadline, as that term is used in the Agreement: (1) a copy of the long-form notice is sent to all persons on the proprietary mailing lists, and to all individuals who have contacted Class Counsel about the issues raised in this litigation and provided their address; (2) Kmart enters into contracts, or otherwise make arrangements, with nationwide and disability-focused publications as described above to publish the summary notice; (3) copies of both the long-form and in-store notices are sent to disability focused organizations; (4) copies of the in-store notices are posted in all Kmart stores; and (5) a link to the long-form notice is placed on Kmart's website.

## III.    Procedures for Opt-Outs and Objections

The Court further approves the procedures for opt-outs and objections proposed by the parties.

Potential members of either the Nationwide Class or the Damages Sub-Class will not be able to opt-out of the injunctive relief in the proposed settlement.  However, potential members of the Damages Sub-Class will have the opportunity to opt-out of the monetary portions of the

settlement by filing a written opt-out statement with the Claims Administrator according to the procedures set forth in the settlement notice.  The opt-out statement must be post-marked and mailed to the Claims Administrator on or before July 7, 2006.

Members of either class who wish to object to the proposed settlement may do so by filing a written objection with the Court (with copies to counsel) on or before July 7, 2006.  Only class members who have filed written objections will have the right to present objections orally at the Fairness Hearing, and only if they expressly state in their written objection that they would like to do so.  Any members of the Nationwide Class or the Damages Sub-Class who do not make their objections to the settlement in the manner described above shall be deemed to have waived all objections and opposition to the fairness, reasonableness and adequacy of the settlement and any other matters pertaining to the lawsuit.

## IV.    Class and Sub-Class Members will be Preliminarily Enjoined from Asserting Released Claims.

The Court also finds it appropriate to preliminarily enjoin members of the Nationwide Class and the Damages Sub-Class from asserting or pursuing any of the claims to be released pursuant to this settlement in either federal or state court, as numerous other courts have done in connection with preliminary approval of proposed class action settlements.  See, e.g., In re Mexico Money Transfer Litig., No. 98 C 2407, 98 C 2408, 1999 WL 1011788, at *3 (N.D. Ill. October 19, 1999); In re WorldCom Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 03 Civ. 9490 (DLC), 2005 WL 78807, at *3 (S.D.N.Y. Jan. 11, 2005) (enjoining "[p]rosecution by any Class

Member of any action or claim that is subject to the release and dismissal contemplated by the Settlement . . .").[10]

Because the Court believes that it would aid in the protection of its jurisdiction and in the management of the settlement approval process, members of the Nationwide Class and the Damages Sub-Class are hereby preliminarily enjoined from asserting or pursuing the following claims:

(a)     Claims seeking injunctive relief relating in any way to the accessibility of Kmart stores to persons who use wheelchairs or scooters under Title III of the Americans with Disabilities Act; Cal. Code Regs., Title 24, and any other provision of California law to the extent it grants a right of action for alleged violations of the foregoing; and any state or local statutory, administrative, regulatory or code provisions that either (1) directly incorporate Title III of the Americans with Disabilities Act or any of the rules or regulations promulgated thereunder or

---

[10]     In addition to the Court's inherent power, this Court "may issue all writs necessary or appropriate in aid of [its] respective jurisdictions and agreeable to the usages and principles of law" pursuant to the All Writs Act. 28 U.S.C. § 1651(a). Numerous courts have held that under the All Writs Act, a court presiding over a class action may enjoin class members from bringing related litigation in other courts. See, e.g., Liles v. Del Campo, 350 F.3d 742, 746 (8th Cir. 2003) (under All Writs Act, "[i]njunctions of related proceedings in other federal courts are appropriate when necessary for adjudication or settlement of a case."); Hillman v. Webley, 115 F.3d 1461, 1469 (10th Cir. 1997) (in connection with class action settlement, "[t]he district court undoubtedly had the authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation in the state court . . ."); In re VMS Sec. Litig., 103 F.3d 1317, 1324 (7th Cir. 1996) ("in the context of complex class action litigation, a federal district court may appropriately use the All Writs Act to . . . enjoin the prosecution of subsequent state court claims . . ."); see also 7B Charles Alan Wright, et al., Federal Practice and Procedure § 1798.1 (if a class action "proceeds to the settlement stage, then an injunction [against state court litigation] to protect the court's power to effectuate a settlement may be upheld.").

(2) set forth standards or obligations coterminous with or equivalent to Title III of

the Americans with Disabilities Act or any of the rules or regulations

promulgated thereunder;

(b)    Claims for Statutory Minimum Damages relating in any way to the accessibility

of Kmart stores or closed Kmart stores to persons who use wheelchairs or

scooters by operation of or pursuant to the following state statutes or codes that

may be recovered regardless of the amount of actual damages proved:  California

– Cal. Civil Code §§ 52, 54.3; Colorado – C.R.S. § 24-34-602; Hawaii – Hawaii

Statutes § 489-7.5; Massachusetts – M.G.L.A. ch. 272 § 98; New York – N.Y.

Civ. R. §§ 40-c, 40-d, N.Y. Exec. § 296(2)(a); Oregon – O.R.S. § 659A.885; and

Texas – Tex. Hum. Res. Code §§ 121.003, 121.004, and any other statute, codes

or laws (as previously or presently codified, or as they may be codified in the

future) providing for minimum damages in a specified amount in such states.

## V.    Fairness Hearing

The Court will hold a Fairness Hearing on this proposed settlement at 10:00 a.m. on July

27, 2006, to determine whether the proposed settlement is fair, reasonable and adequate and

therefore should be approved, whether to approve the agreed-upon payment of attorneys' fees,

and any other matters relevant to the settlement or this lawsuit.

Dated: March 22, 2006           BY THE COURT:

                                          S/John L. Kane
                                          SENIOR U.S. DISTRICT COURT JUDGE