IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 99-cv-01923-JLK-CBS

CARRIE ANN LUCAS,
DEBBIE LANE,
JULIE REISKIN,
EDWARD MUEGGE,
ROBERT G. GEYER,
STACY BERLOFF,
JEAN RYAN,
JAN CAMPBELL,
    on behalf of themselves and all others similarly situated,

                                   Plaintiffs,

v.

KMART CORPORATION,

                                   Defendant.

## ORDER GRANTING CLASS COUNSEL'S UNOPPOSED PETITION
## FOR AN AWARD OF ATTORNEYS' FEES AND COSTS

      This matter is before the Court in connection with Class Counsel's Unopposed Petition for an Award of Attorneys' Fees and Costs ("Petition"). Class Counsel seek compensation for their work in securing a settlement on behalf of a Nationwide Class seeking relief under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and a Damages Sub-Class seeking relief under the laws of seven states. Defendant Kmart Corporation ("Kmart") has agreed to pay the amount sought by Class Counsel, subject to Court approval. In addition, after an extensive, Court-approved program to notify the class of the terms of the settlement, including the amount of fees and costs sought by Class Counsel, there have been no objections to the requested

award. For the reasons set forth below, this Court grants the Petition, and approves the fees and costs sought by Class Counsel.

## BACKGROUND

**I.     The Litigation.**

In 1999, Fox & Robertson entered into a contingency fee agreement to bring suit against Kmart based on alleged violations of Title III of the ADA. Although initially brought only on behalf of one plaintiff, the complaint was amended in 2000 to assert a nationwide class action.

The evidence submitted by Class Counsel demonstrates that they performed a significant amount of work in connection with Plaintiffs' motion for class certification. This included, for example: reviewing over 100,000 pages of documents, as well as a database with data from over 65,000 "mystery shopper" reports; taking or defending over 50 depositions of fact and expert witnesses; interviewing, and obtaining declarations from, approximately 80 putative class members; and writing, or responding to, more than 15 briefs on the class certification issue.

Plaintiffs filed their final class certification brief on January 4, 2002; two weeks later, Kmart filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in the Bankruptcy Court for the Northern District of Illinois. Plaintiffs moved to lift the bankruptcy stay, which was denied by the bankruptcy court. Plaintiffs unsuccessfully appealed the denial.

After Kmart emerged from bankruptcy on May 6, 2003, it argued that the class claims for injunctive relief had been discharged by its bankruptcy. This Court held that the injunctive claims had not been discharged, and that the case could proceed.

Between the summer of 2003 and the summer of 2005, the parties continued to litigate the case, submitting opposing briefs on discovery matters and recent relevant decisions in other cases. On July 13, 2005, this Court granted Plaintiffs' motion for class certification and certified a nationwide class of individuals who use wheelchairs or scooters and who shop at Kmart stores. Kmart immediately sought and obtained permission from the Tenth Circuit to appeal that decision under Fed. R. Civ. P. ("Rule") 23(f). Briefing of the appeal has been continued pending settlement negotiations.

During the course of this litigation, Kmart has been represented by two large, Denver-area law firms and three other large law firms based in other cities around the country; a sixth large, national firm represented Kmart during its bankruptcy.

**II.   The Settlement.**

In August 2005, the parties initiated settlement negotiations that resulted in the settlement agreement before this Court. The parties carefully structured the settlement negotiations. The parties reached agreement concerning a large part of the injunctive relief before turning to damages, and the negotiations concerning damages and injunctive relief were kept completely separate from one another. Further, the parties did not discuss attorneys' fees until there was substantial agreement on all parts of the injunctive and damages settlement.

The settlement agreement provides injunctive relief that is comprehensive and far-reaching, resulting in immediate improvements in Kmart's policies relating to accessibility, as well as surveys of each of Kmart's stores to identify, and remedy, architectural barriers. See Lucas v. Kmart Corp., 234 F.R.D. 688, 691-92 (D. Colo. 2006). In addition, the settlement creates a $13

million fund on behalf of a Damages Sub-Class, which Class Counsel believes is the largest monetary settlement ever of a public accommodations disability discrimination case.

The Damages Sub-Class fund provides compensation for the release of claims for statutory minimum damages under the laws of the seven Statutory Minimum Damages States. Lucas, 234 F.R.D. at 692. The formula approved by this Court to allocate the damages fund among these states took into account two factors: the number of Kmart stores in the state, and the minimum amount of statutory damages recoverable in the state. Id. at 695. Based on this formula, California receives over $12 million of the fund, in large part because California state law provides by far the largest amount of minimum statutory damages of any state.

In the settlement agreement, Kmart also agreed to pay, subject to Court approval, $3.25 million in attorneys' fees for work done prior to the final approval date, and costs incurred through that date in an amount not to exceed $125,000. In addition, Kmart agreed to pay Class Counsel's reasonable fees and costs relating to implementing and monitoring the Agreement after final approval.

### III.    Class Counsel.

The majority of work on behalf of the class in this case was performed by the firm of Fox & Robertson. Class Counsel has submitted the following evidence concerning the firm.

Fox & Robertson is a small firm, consisting (for most of the litigation) of two attorneys, Tim Fox and Amy Robertson, and (for the period 2000 to 2002) of attorney Michael Breeskin as well.

Fox & Robertson has a strong emphasis in representing plaintiffs in disability rights cases, and has represented plaintiffs, or appeared in cases, in California, Colorado, Florida, Massachusetts and Virginia.

Mr. Fox graduated from Stanford Law School in 1991, and Ms. Robertson graduated from Yale Law School in 1988. Together they formed Fox & Robertson in 1996, and since then have litigated dozens of disability rights cases, including several large class actions -- according to Ms. Robertson, courts have appointed Fox & Robertson as class counsel in six disability rights class actions. Mr. Fox and Ms. Robertson have written and spoken extensively on issues relating to the rights of persons with disabilities.

Mr. Breeskin graduated from Georgetown University Law Center in 1975. He has had extensive experience in the field of disability rights, including working for disability rights organizations for nine years before joining Fox & Robertson. He, too, has written and spoken extensively on disability rights issues.

The evidence demonstrates that this litigation placed a heavy burden on Fox & Robertson. The vast majority of costs were fronted by Fox & Robertson. At several points during the litigation, Fox & Robertson was unable to take on new cases because of its commitment to the Kmart case. For example, in 2001, almost 50% of the total hours billed at Fox & Robertson were for work on this case.

Fox & Robertson's co-counsel practice in communities across the country. Many of these attorneys are known nationally for their skill in disability, civil rights and/or class action cases.

**ARGUMENT**

Kmart has agreed to pay $13 million in damages, $3.25 million in fees, and $125,000 in costs, resulting in an overall monetary recovery of $16,375,000. Class Counsel seek an award of fees in the amount of $3.25 million, which represents less than 20% of the total monetary recovery,[1] and a multiplier of 1.87 on Class Counsel's combined lodestar. For the reasons set forth below, this Court grants Class Counsel's Petition under the Tenth Circuit's common fund approach. In the alternative, the Court grants the Petition under California's enhanced lodestar approach.

**I.     Recovery Of Fees Under Tenth Circuit Law.**

**A.     Legal Background.**

Class Counsel seek recovery of their fees and costs under the common fund doctrine as applied in this Circuit. Under this doctrine, courts apply one of two methods of determining reasonable attorneys' fee awards: by a percentage of the fund approach; or by the lodestar plus multiplier ("enhanced multiplier") approach, whereby the reasonable hours expended are multiplied by a reasonable hourly rate, adding a multiplier to account for risk. Vaszlavik v.

---

[1] In determining the total amount of the common fund, it is proper to include agreed-upon fees and costs in addition to class damages. See, e.g., Staton v. Boeing Co., 327 F.3d 938, 972 (9th Cir. 2003) (holding that "the parties may negotiate and agree to the value of a common fund (which will ordinarily include an amount representing an estimated hypothetical award of statutory fees) and provide that, subsequently, class counsel will apply to the court for an award from the fund, using common fund fee principles." (Emphasis added.)); Johnston v. Comerica Mortgage Corp., 83 F.3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.").

Storage Tech. Corp., Civ. Action No. 95-B-2525, slip. op. at 2 (D. Colo. March 9, 2000) (citing Uselton v. Commercial Loveless Motor Freight, Inc., 9 F.3d 849, 853 (10th Cir. 1993) & Rosenbaum v. MacAllister, 64 F.3d 1439, 1445 (10th Cir. 1995)). In the Tenth Circuit, there is "'a preference for the percentage of the fund method' in common fund cases." Id. (citations omitted). "The Tenth Circuit has concluded that whichever method for fee calculation is employed, the District Court must consider the 12 factors articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)." Id. at 3 (citations omitted).

### B. Lodestar Computation.

The lodestar is the product of the number of hours reasonably expended on a case and a reasonable hourly rate. See, e.g., Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). Class Counsel have submitted detailed billing records, along with the Declaration of Darold W. Killmer, an expert on attorneys' fees.

#### 1. Reasonable Number of Hours.

Mr. Killmer reviewed fee records, along with Fox & Robertson's entire case file, including pleadings and documents. He found the fee records to be "very detailed, and [to] provide a clear basis for understanding the tasks performed and the time expended for those tasks . . . easily meet[ing] the standards typically required in this judicial district for compensability of time spent."

This litigation has spanned the course of seven years. During that time, Class Counsel have: interviewed scores of class members; taken or defended more than 50 depositions; reviewed, analyzed and organized over 100,000 pages of documents, in addition to a database with almost 70,000 mystery shopper reports; written or responded to over 15 briefs on the class

-7-

certification issue alone; briefed the issue of whether, under Rule 23(f), the Tenth Circuit should accept an interlocutory appeal of the class certification decision; attempted to have the bankruptcy stay lifted; and negotiated the settlement.[2]

To accomplish these tasks, Class Counsel and their staff billed approximately 6,500 hours, of which less than 5,000 hours were billed by attorneys. Fox & Robertson, in the exercise of billing judgment, has reviewed its fee statement and eliminated certain entries. Finally, Mr. Killmer has reviewed Class Counsel's records and, in his expert opinion, the number of hours billed by Class Counsel in this case is reasonable.

This Court finds that the number of hours billed by Class Counsel in this case is reasonable.

### 2. Reasonable Hourly Rates.

Hourly rates must reflect the prevailing market rates in the relevant community. Because of the significant resources and skill required, as well the risks entailed, to litigate large-scale actions on behalf of a class, very few attorneys handle such cases. Thus the relevant community for purposes of determining a reasonable billing rate for Class Counsel likely consists of attorneys

---

[2] The fact that Plaintiffs were unsuccessful in opposing Kmart's Rule 23(f) appeal, or in lifting the stay, does not preclude Plaintiffs from recovering fees for work done on these tasks. See Hensley v. Eckerhart, 461 U.S. 424, 435 (1983) (Holding that when a plaintiff achieves excellent results, "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."). In any event, Class Counsel used the research conducted in connection with that unsuccessful motion and appeal in making their successful argument that this case was not discharged in bankruptcy.

who litigate nationwide, complex class actions.  See, e.g., Casey v. City of Cabool, 12 F.3d 799, 805 (8th Cir. 1994) ("'A national market or a market for a particular legal specialization may provide the appropriate market.'"  (Quotation omitted.)).  This rate would be significantly higher than the rate prevailing in Denver.  Class Counsel have chosen to take a conservative approach and have applied rates applicable in the Denver legal community.

In analyzing reasonable hourly rates, Class Counsel have specifically addressed the rates of Fox & Robertson attorneys, who billed the majority of hours in this case, and have applied "blended" rates for all other attorneys, and for paralegals and other staff.

### a. Hourly rates for Fox & Robertson attorneys.

Class Counsel seek a rate of $330 per hour for work performed by Fox & Robertson attorneys on the Kmart case.  Class Counsel have submitted the following evidence to establish that this is the prevailing rate in the Denver community:

- ! The expert opinion of Mr. Killmer;

- ! The hourly rates approved by Colorado federal and state courts in successful employment and civil rights actions over the last several years.

- ! A survey conducted by the Colorado Bar Association in 2000 (the "CBA Survey"), reflecting that the top 5% of plaintiff's employment lawyers (a reasonable comparison to the type of work performed in this case) charged $325 per hour.  In light of the fact that six years have passed since the CBA survey, the rate requested here -- $330 per hour -- is conservative.

### b. Hourly rates of other timekeepers.

The other attorneys who worked on the Kmart case on behalf of the class include attorneys known nationally for their skill in civil rights and class action cases who would command the highest rates in any jurisdiction in which they practiced, as well as less experienced attorneys. Class Counsel have applied a blended average rate of $275 per hour for all hours billed by non-Fox & Robertson attorneys, including partners and associates, which Mr. Killmer opines is a conservative approach.

Class Counsel have also applied a blended average rate of $110 per hour for work done by paralegals in this case, a rate that Mr. Killmer opines is reasonable for the Denver community. This rate is also supported by the CBA Survey, which found that six years ago, experienced paralegals charge between $75 and $120 per hour.

This Court finds that the rates applied by Class Counsel are reasonable. Based on these rates and the total hours billed, the total lodestar in this case is $1,734,947.50.

### C.   Application of the <u>Johnson</u> Factors.

The <u>Johnson</u> factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Johnson</u>, 488 F.2d at 717-19, <u>cited in</u> <u>Vaszlavik</u>, slip op. at 3.

### 1. Time and labor required.

This case involved a significant amount of time and labor. The case took seven years to litigate. During that time, Class Counsel and their staff billed more than 6,500 hours for work done on this case. This work included: interviewing, and obtaining declarations from, over 80 class members; taking or defending more than 50 depositions across the country; reviewing and organizing over 100,000 pages of documents; reviewing and analyzing a database of over 65,000 mystery shopper reports; writing and responding to numerous briefs on the class certification issues, among others; and engaging in extensive settlement negotiations.

### 2. Novelty and Difficulty of the Questions Presented by the Case.

.          This case involved several novel and/or difficult issues, including:

- ! The appropriate standard in the Tenth Circuit for the grant of an interlocutory appeal under Fed. R. Civ. P. 23(f) of an order granting class certification;

- ! Whether the class claims for injunctive relief, attorneys' fees and costs were discharged by Kmart's bankruptcy; and

- ! Whether merchandise on moveable displays must be on an accessible route at least 36 inches wide.

### 3. Skill Requisite to Perform the Legal Service Properly.

This case involved numerous novel and/or difficult legal and factual issues, many of which have not been fully resolved by the courts. Litigating such issues required a high degree of specialized skill in disability rights law and complex litigation. See Vaszlavik, slip op. at 3. It also

required a small firm and co-counsel to manage and present a large quantity of documents and information.

The result in this case is outstanding. The injunctive relief obtained by the class includes policy changes as well as surveys of every Kmart store that will result in the removal of architectural barriers. To the best of Class Counsel's knowledge, the damages recovery for the Damages Sub-Class is larger than in any previous case of this kind.

### 4.     **Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case**.

.     Large-scale class actions such as this case -- involving dozens of depositions, over 100,000 pages of documents, a large database, numerous briefs, and a bankruptcy proceeding -- necessarily require a great deal of work, and a concomitant inability to take on other cases. That is particularly true here because most of the work was done by Fox & Robertson, a small firm with only two attorneys at present.

### 5.     **The Customary Fee.**

The requested fee is reasonable under either the percentage of the fund or enhanced lodestar approach. Class Counsel seek less than 20% of the fund, which is over $1.6 million less than the customary fee award of 30% of the fund under the percentage of the fund approach. See Vaszlavik, slip op. at 7; see also 4 Robert Newberg, Newberg on Class Actions § 14:6 at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery.").

-12-

Under the enhanced lodestar approach, courts typically award multipliers of 2 to 3 times the lodestar, whereas Class Counsel here seek only a multiplier of 1.87.  See Vaszlavik, slip op. at 5.

### 6. Whether the Fee Is Fixed or Contingent.

Class Counsel pursued this case based on a contingent fee agreement, and thus they would have recovered nothing if they had not prevailed.  "Given the risk of non-recovery, this factor weighs heavily in favor of the requested fee."  Vaszlavik, slip op. at 6.

### 7. Any Time Limitations Imposed by the Client or the Circumstances.

The size, magnitude and procedural posture of this case imposed significant time limitations on Class Counsel in this case, particularly Fox & Robertson.  The time limitations were particularly significant given the prospect of a substantial delay resulting from the Rule 23(f) interlocutory appeal, lengthy trial and subsequent appeals.

### 8. The Amount Involved and the Results Obtained.

Class Counsel recovered $13 million on behalf of the subclass.  Class Counsel believe that this is the largest recovery in a class action against a public accommodation for disability discrimination.  Given the significant risk that the plaintiffs would recover nothing for their efforts, this result more than justifies the requested fee.  See Vaszlavik, slip op. at 6.

### 9. The Experience, Reputation and Ability of the Attorneys.

The Class Counsel in this case include attorneys with national reputations for their work on disability rights cases, and skill in litigating civil rights and class action cases.  Together the result achieved by Class Counsel is exceptional.

### 10. The Undesirability of the Case.

Given the risk of no recovery and the unsettled legal issues described above, this was not a desirable case to take. See Vaszlavik, slip op. at 7.

### 11. The Nature and Length of the Professional Relationship with the Client.

This factor is irrelevant in this case.[3]

### 12. Awards in Similar Cases.

As set forth above, the amount of fees requested by Class Counsel is substantially less than is typically awarded under either the enhanced lodestar or percentage of the fund approach.

This Court finds that the fees requested by Class Counsel are reasonable under Tenth Circuit precedent both because the Johnson factors support the request, and because the requested fees are significantly less than the amount of fees typically awarded in common fund cases.

## II. Recovery Of Fees Under California Law.

In the alternative, the Court grants the Petition under California law.

---

[3] The Tenth Circuit has recognized that "rarely are all of the Johnson factors applicable." Brown v. Phillips Petroleum Co., 838 F.2d 451, 456 (10th Cir. 1988). Fox & Robertson, which is one of the few firms in the country that represents plaintiffs in disability rights actions, has represented the named plaintiffs in other cases. This fact does not impact the fees analysis. See, e.g., Ruiz v. Estelle, 553 F. Supp. 567, 594 (S.D. Tex. 1982) (Finding, in discussing this factor, that "[t]he meaning of this criterion and its effect on the calculation of a 'reasonable' fee has always been unclear. Courts applying to Johnson factors typically state simply that this particular standard is irrelevant or immaterial.")

### A.   Applicability of California Law.

State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision. See, e.g., Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (holding that "[b]ecause Washington law governed the claim, it also governs the award of fees."); Mathis v. Exxon Corp., 302 F.3d 448, 461 (5th Cir. 2002); Pub. Serv. Co. of Colo. v. Continental Cas. Co., 26 F.3d 1508, 1520 (10th Cir. 1994). Where, as here, a plaintiff successfully obtains benefits for the class under both state and federal claims, fees may be awarded under state law. See, e.g., Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478-79 (9th Cir. 1995). Thus if a plaintiff successfully obtains benefits for a class on a state law claim, and state law permits recovery under the common fund or enhanced lodestar doctrines, then the plaintiff may seek a fee recovery based on these doctrines. See, e.g., Mangold, 67 F.3d at 1478-79 (affirming an award of a fee multiplier based on state law); Vizcaino, 290 F.3d at 1047-48 (holding that where a state law claim resulted in a settlement fund, the lower court correctly applied the common fund doctrine based on state law.).

In this case, Plaintiffs were successful, obtaining benefits for the class on both their federal claim, and their claims under California state law, resulting in a California settlement fund of over $12 million. Thus the requested fee may be approved based on California law.

### B.   California Attorneys' Fee Law.

Where, as here, a class action settlement results in a monetary fund for the class, courts applying California law blend two doctrines, the enhanced lodestar doctrine and the percentage-of-the-benefit doctrine.

> Under California law,
>
> [T]he primary method for establishing the amount of "reasonable" attorney fees is the lodestar method. The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.

Lealao v. Beneficial California, Inc., 97 Cal. Rptr. 2d 797, 803 (Cal. Ct. App. 2000). When a class action settlement includes a common fund, a court should adjust the lodestar multiplier to ensure that the fee award, as a percentage of the overall common fund, is within the range of fees freely negotiated in the legal marketplace in comparable litigation. Id. at 821.

### C. Multiplier.

Class Counsel's request of a multiplier of 1.87 is well supported by California law.

California has a "relatively permissive attitude on the use of multipliers." Lealao, 97 Cal. Rptr. 2d at 815. Various factors may justify an award of a multiplier, including: (1) the novelty and difficulty of the questions involved; (2) the skill displayed in presenting them; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award. Ketchum v. Moses, 104 Cal. Rptr. 2d 377, 384 (Cal. 2001) (citation omitted). A court may then use the percentage-of-the-benefit analysis to "cross-check" the propriety of a lodestar fee award. Lealao, 97 Cal. Rptr. 2d at 817 & n.12.

The four factors identified in Ketchum mirror several of the Johnson factors discussed above, and will not be repeated here, with the exception of the contingency risk factor. California courts place particular emphasis on contingency risk, which is "[o]ne of the most common fee

enhancers." Graham v. DaimlerChrysler Corp., 21 Cal. Rptr. 3d 331, 352 (Cal. 2004). "'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.'" Ketchum, 104 Cal. Rptr. 2d at 384 (quotation omitted).

The case at bar involved significant risk to Class Counsel. First, as set forth above, this case involved novel issues that, if decided against the class, could have significantly reduced the likelihood that Class Counsel would be paid for their work on this case.

The risk to Class Counsel was particularly acute in this case because the Defendant filed for bankruptcy in the middle of the case. This factor alone justifies a larger multiplier than Class Counsel have requested. See In re Safety Components, Inc. Sec. Litig., 166 F. Supp. 2d 72, 104 (D.N.J. 2001) (Awarding multiplier of 2.81, in part because class counsel faced a heightened risk of nonpayment of fees due to the defendant's bankruptcy.).

The Ketchum factors demonstrate that the 1.87 multiplier requested by Class Counsel is reasonable. Indeed, it is less than multipliers typically awarded in California and elsewhere. See In re Calif. Indirect Purchaser X-Ray Film Antitrust Litig., 1998 WL 1031494 *10 (Cal. Sup. Ct. 1998) ("Cases from California and other jurisdictions reflect that multipliers of two or more are commonplace in class actions.");[4] see also Vaszlavik, slip op. at 5 (noting that under common

---

[4]   Citing ABS Pipe Cases II, J.C.C.P. No. 3126 (Contra Costa Sup. Ct.) (Orders Signed June 24, 1998) (awarding lodestar and multiplier of 2.2 in eight class action settlements together worth approximately $70,000,000; Wilson v. Bank of America Nat'l Trust & Sav. Ass'n., No. 643872 (Cal. Sup. Ct. Aug. 16, 1982) (multiplier of 10 times the hourly rate

fund theory, courts "regularly award multipliers of two to three times the lodestar or more to compensate for risk and to reflect the quality of the work performed.").

The reasonableness of the requested fee is further demonstrated by a cross-check with the percentage-of-the-benefit approach. The purpose of this cross-check is "to ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." Lealao, 97 Cal. Rptr. 2d at 821. "'The simplest way for the law to duplicate the bargain that informed parties would reach . . . is to look to fee award levels in actions brought by sophisticated private parties under the same or comparable statutes.'" Id. at 819-20 (quotation omitted).

As set forth above, "class action fee awards are typically 30% of the fund created by the settlement." Vaszlavik, slip op. at 3; see also 4 Robert Newberg, Newberg on Class Actions § 14:6 at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). This cross check demonstrates that Class Counsel's fee request -- which represents less than 20% of the common fund -- is reasonable.

---

awarded); Glendora Comm. Redev. Agency v. Demeter, 155 Cal. App. 3d 456, 465 (Cal. Ct. App. 1984) (affirming a 12-times multiplier of counsel's hourly rate and expressly rejecting the argument that the requested fee was exorbitant or unconscionable); In re Trilogy Sec. Litig., C-84-20617(A) (N.D. Cal.1986) (multiplier of 4.37); Underwood v. Pierce, 79-1318-HP (3.5 multiplier; $60 million settlement) (C.D. Cal.1983).

### III.   Reasonable Costs.

Under both California law and the law of this Circuit, reasonable costs may be awarded to successful plaintiffs in a class action. See Cal. Code Civ. P. § 1032(b); Vaszlavik, slip op. at 7 ("As with attorneys' fees, an attorney who creates or preserves a common fund for the benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."). Plaintiffs are also entitled to an award of costs because they successfully obtained benefits for the class on their claims under the ADA. 42 U.S.C. § 12205.

Class Counsel have submitted detailed records of their costs to date, which total $123,312.56. In addition, they anticipate that additional costs relating to the Final Approval Hearing will result in total costs in excess of $125,000.

This Court finds that the costs incurred by Class Counsel to date are reasonable, and approves an award of $123,312.56 for costs incurred through July 21, 2006. The Court also approves an award of reasonable costs incurred after that date and prior to the date of final approval, not to exceed $125,000.

### IV.   Fees And Costs For Implementing And Monitoring The Settlement Agreement.

Kmart has agreed to pay Class Counsel's reasonable fees and costs relating to implementing and monitoring the Agreement after final approval. Payment of such fees and costs is appropriate. See Diaz v. Romer, 961 F.2d 1508, 1511 (10th Cir. 1992) (Holding that "attorney's fees can be awarded for post-judgment monitoring and other efforts to ensure compliance with court orders in a civil rights case."). The Court hereby approves the payment of

Class Counsel's reasonable fees and costs relating to implementing and monitoring the Agreement after final approval.

## **CONCLUSION**

For the reasons set forth above, this Court grants the Petition, and approves: (1) an award of attorneys' fees through the date on which final approval is granted of $3.25 million; (2) an award of costs incurred through July 21, 2006 of $123,312.56, plus additional reasonable costs incurred after that date and prior to the date of final approval, with total costs not to exceed $125,000; and (3) an award of reasonable fees and costs relating to implementing and monitoring the Agreement after final approval.

Dated:  July 27, 2006                **John L. Kane**
                                      SENIOR U.S. DISTRICT COURT JUDGE