IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 99-cv-01923-JLK

CARRIE ANN LUCAS,
DEBBIE LANE,
JULIE REISKIN,
EDWARD MUEGGE,
ROBERT G. GEYER,
STACY BERLOFF,
JEAN RYAN,
JAN CAMPBELL,
      on behalf of themselves and all others similarly situated,

                                 Plaintiffs,

v.

KMART CORPORATION,

                                 Defendant.

---

## ORDER CERTIFYING CLASS, APPROVING SETTLEMENT AGREEMENT AND ENJOINING THE FILING OR PURSUIT OF RELEASED CLAIMS

---

      Plaintiffs Carrie Ann Lucas, Debbie Lane, Julie Reiskin, Edward Muegge, Robert Geyer,

Stacy Berloff, Jean Ryan and Jan Campbell, and Defendant Kmart Corporation ("Kmart"),

jointly moved the Court for an Order: (1) holding that the notice issued in this case satisfied

Rule 23 of the Federal Rules of Civil Procedure and due process; (2) approving the proposed

settlement in this case as fair, reasonable and adequate; and (3) permanently enjoining class

members and sub-class members from asserting any of the claims released pursuant to the

settlement agreement. In addition, plaintiffs have moved for certification for settlement

purposes only of the damages sub-class that the Court earlier certified preliminarily. The Court

previously reviewed the settlement agreement executed by the parties ("Settlement Agreement" or "Agreement"), which is attached to this Order as an Appendix, concluded that it was fair, reasonable and adequate, and, on that basis, preliminarily approved it. Lucas v. Kmart Corp., 234 F.R.D. 688 (D. Colo. 2006) ("Preliminary Approval Order"). The Court also approved the notice plan proposed by the parties and the forms of notice. Id. at 696-97. Following the Court's rulings, the parties executed the proposed notice plan. In response to the approved notice, the Court received only one objection.

After considering the various briefs filed by the parties during the approval process, plaintiffs' motion for certification of the sub-class for settlement purposes, the testimony and evidence submitted with those pleadings and during the Fairness Hearing, and applicable law, the Court will overrule the objection, grant the motions, certify the damages sub-class, approve the Settlement Agreement, and enter the requested permanent injunction.

## Applicable Law, Facts and Procedural History

### I.      Applicable Statutes

Title III of the ADA prohibits disability discrimination in places of public accommodation. 42 U.S.C. § 12181 et seq. The specific design criteria required by Title III are set forth in the Department of Justice Standards for Accessible Design ("Standards"). 28 C.F.R. pt. 36, app. A. Title III is enforceable through a private right of action for injunctive relief, but Title III does not provide a damages remedy for private plaintiffs. 42 U.S.C. § 12188(a)(1) & (2). Successful plaintiffs are, however, entitled to attorneys' fees. Id., § 12205. Under California law, plaintiffs may also seek injunctive relief to require compliance with California's

access standards, set forth in Title 24 of the California Code of Regulations.  See, e.g., Cal. Civ.

Code §§ 51(b), 52(c)(3), 54(a), 54.3(b); People ex rel. Deukmejian v. CHE, Inc., 197 Cal. Rptr.

484, 491 (Cal. Ct. App. 1983).

California, Colorado, Hawai'i, Massachusetts, New York, Oregon and Texas (together,

the "Sub-Class States") each has a statute pursuant to which a prevailing plaintiff in a disability

discrimination action against a public accommodation can be awarded damages in an amount

specified by statute without proving actual damages ("Statutory Minimum Damages").  The

Statutory Minimum Damages recoverable in each state are as follows:  California ($4,000);[1]

Colorado ($50);[2] Hawaii ($1,000);[3] Massachusetts ($300);[4] New York ($100);[5] Oregon ($200);[6]

and Texas ($100).[7]

## II.    History of the Litigation, Negotiation, Preliminary Approval and Notice

This action was filed in 1999.  Between the spring of 2000 and January 2002, the parties

conducted extensive discovery, including the production of over 100,000 pages of documents

---

[1]    Cal. Civ. Code § 52(a).  Minimum damages of $1,000 are recoverable pursuant to Cal.
Civ. Code § 54.3.

[2]    Colo. Rev. Stat. § 24-34-602.

[3]    Hawaii Statutes § 489-7.5.

[4]    M.G.L.A. ch. 272 § 98.

[5]    N.Y. Civ. R. §§ 40-c, 40-d; N.Y. Exec. § 296(2)(a).

[6]    O.R.S. § 659A.885.

[7]    Tex. Hum. Res. Code §§ 121.003; 121.004.  Due to a typographical error, the amount of
Statutory Minimum Damages recoverable pursuant to these statutes was misstated in the
Preliminary Approval Order at $200.  See Lucas, 234 F.R.D. at 691 n.7.

and more than 50 depositions.  Plaintiffs filed their motion for class certification in July 2001

and there was extensive briefing on that issue.  In January 2002, Kmart declared bankruptcy.

During the pendency of Kmart's bankruptcy, plaintiffs attempted unsuccessfully to lift the

bankruptcy stay as it applied to this case.  After Kmart emerged from bankruptcy in May 2003,

the parties appeared before this Court to address whether this matter had been discharged in

bankruptcy.  This Court ruled that the matter could proceed.

On July 13, 2005, after additional briefing, the Court granted plaintiffs' motion for class

certification and certified a nationwide class of individuals who use wheelchairs or scooters and

who shop at Kmart stores (the "Nationwide Class").  Kmart immediately sought and obtained

permission from the Tenth Circuit to appeal that decision under Rule 23(f) of the Federal Rules

of Civil Procedure ("F.R.C.P.").  As a result of the parties reaching the settlement presently

before the Court, briefing before the Tenth Circuit was not completed.

In August 2005, the parties initiated the settlement negotiations that yielded the

Settlement Agreement submitted to the Court.  These settlement negotiations were ongoing from

August 2005 to February 2006.  As part of those negotiations, Kmart provided plaintiffs with

additional documents relating to topics addressed during the negotiations and made

arrangements for plaintiffs' expert to survey two Kmart stores.  In addition to extensive

telephone and email conversations, the parties engaged in two multi-day, in-person negotiating

sessions along with other shorter meetings.

The parties' initial negotiations concerned injunctive relief.  The parties reached

agreement concerning a large part of the injunctive relief before turning to damages, and the

negotiations concerning damages and injunctive relief were kept completely separate from one another.  The parties did not discuss attorneys' fees until there was substantial agreement on all parts of the injunctive and damages settlement.  Both parties have been represented throughout these negotiations by counsel with extensive experience in disability rights and class action litigation.

Once the settlement was almost finalized, Class Counsel provided the draft Settlement Agreement to prominent members of the disability rights community across the country.  The parties incorporated into the Settlement Agreement several suggestions that they received through this process.

At the Fairness Hearing, named plaintiff Carrie Ann Lucas testified to the origins of this case and to her involvement in each step of both the litigation and settlement negotiations.  Class Counsel Amy F. Robertson testified to the extensive discovery in which the parties engaged and the hard-fought briefing on the question of class certification.  Although active litigation largely ceased after the Nationwide Class was certified, both the discovery and the class certification briefing addressed a number of the key merits questions in this case.  Ms. Robertson also testified to the arm's length settlement negotiations that, while amicable, were vigorous and at times contentious.

As noted above, on March 22, 2006, this Court granted preliminary approval of the Settlement Agreement and held that the parties' proposed notice plan satisfied the requirements of due process and F.R.C.P. 23.  <u>Lucas v. Kmart Corp.</u>, 234 F.R.D. 688, 695-97 (D. Colo. 2006).

Following that order, the parties provided notice in accordance with the approved notice plan. This included mailing a copy of the notice and claim form to a list of over 250,000 individuals who use wheelchairs, 1,003 individuals who had contacted Class Counsel concerning barriers in places of public accommodation, and to 799 organizations focused on people with disabilities. Summary notices were published in Parade, USA Weekend, People, People en Español, Reader's Digest, Vista, New Mobility, Paraplegia News, and Sports N' Spokes. A toll-free telephone line with an interactive voice response system to address questions from class members was set up, as was a website dedicated to the settlement. The latter permitted users to download a copy of the notice and claim form.

Kmart posted a one-page notice at multiple locations in each store and placed a link to the settlement website on its website (www.kmart.com). In response to a request by Class Counsel, a number of disability rights organizations placed a link to the notice on their websites, and the notice was circulated to a number of disability-oriented email mailing lists. Following the Court's preliminary approval, the settlement received extensive press coverage. The extensive notice program undertaken by the parties cost more than $1 million.

The parties submitted a declaration from Jeanne C. Finegan, an expert in the design of notice programs such as the one approved by this Court. Ms. Finegan opined that the notice program implemented in this case was the best notice practicable under the circumstances. Based on her analysis, the publication portion of the notice program is estimated to have reached more than 73% of the targeted individuals. This estimate did not even take into account the

publications targeted at individuals with disabilities, the direct mailings, the in-store notices, and

the various other aspects of the notice program.

In response to this extensive notice program, the Court received only one objection:  a

one-page letter from Marc Miller of Bloomington, Illinois, objecting to the fact that the

definition of the Nationwide Class includes individuals who may become disabled in the future.

(Docket No. 224.)

## III.    Summary of the Settlement

The Nationwide Class is defined in the Settlement Agreement as:

all persons who, at any time from May 6, 2003 through the Term of this
Agreement, used, use or will use wheelchairs or scooters for mobility and who
shopped or shop at any Kmart Store or any Closed Kmart Store or who allege
they would shop or would have shopped at one or more Kmart Stores or Closed
Kmart Stores but for allegedly being denied on the basis of disability the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of such Kmart Store(s) or Closed Kmart Store(s).

(Agreement ¶ 3.30.)

The Damages Sub-Class consists of:

all Settlement Class Members who, at any time from May 6, 2003 through the
Term of this Agreement, shopped or shop at any Kmart Store or Closed Kmart
Store in the Statutory Minimum Damages States or who allege that they would
have shopped or would shop at one or more Kmart Stores or Closed Kmart Stores
in the Statutory Minimum Damages States but for allegedly being denied on the
basis of disability the full and equal enjoyment of the goods, services, facilities,
privileges, advantages, or accommodations of such Kmart Store(s) or Closed
Kmart Store(s).

(Id. ¶ 3.10.)

In summary,[8] under the proposed settlement agreement:

- Within approximately seven and a half years, Kmart will survey all of its stores and bring them into compliance with the Department of Justice Standards for Accessible Design, subject to limited exceptions, to the extent that they relate to accessibility for people who use wheelchairs or scooters for mobility; with respect to its stores in California, Kmart will also bring those stores into compliance with Title 24 of the California Code of Regulations, subject to limited exceptions, to the extent that the provisions of Title 24 relate to accessibility for people who use wheelchairs or scooters for mobility (id. ¶ 6);

- Kmart will ensure that all merchandise on "fixed displays" — including gondolas, perimeter walls, and "T" walls — as well as large appliances, drive aisle displays and sidewalk displays will be on an accessible route of at least 36 inches (id. ¶¶ 12.6.1-.3, 12.6.8);

- Kmart will ensure that all accessible restrooms and fitting rooms will be on an accessible route and maintained free and clear of obstructions (id. ¶¶ 12.6.5-.6);

- Kmart will ensure that at least one accessible check-out lane is open at all times the store is open (id. ¶ 12.5);

- Kmart will, in all but 10% of its stores, provide a path of at least 32 inches to at least one side of moveable apparel displays in 80% of floor space occupied by

---

[8] The description of the settlement set forth in this Order is simply a general summary of some of its terms. The operative terms of the settlement are those that are set forth in the Settlement Agreement itself, which is attached as an Appendix hereto.

moveable displays as well as a distance of 32 inches between certain types of moveable apparel displays when they are placed next to one another (id. ¶¶ 12.1-.2);

- Kmart will implement a customer service system for access to moveable apparel displays and furniture displays under which customers with disabilities who use wheelchairs or scooters for mobility will have the option of requesting assistance or requesting that Kmart provide them with a two-way communication device so that they may summon assistance when they need it (id. ¶ 12.3);

- Kmart will amend its policy and training materials to implement these new policies (id. ¶ 13);

- Compliance will be monitored using "mystery shoppers," as well as customer feedback through the Internet, a toll-free phone line, and in-store forms (id. ¶¶ 14.3-.4);

- The Nationwide Class will release claims for injunctive relief under Title III of the ADA, under state statutes that incorporate or are equivalent to Title III, and under California law through the end of the Term of the Agreement, which is expected to be approximately 2014 (id. ¶ 26.1);

- Kmart will establish a fund (the "Damages Sub-Class Fund") in the amount of $13,000,000 (consisting of $8,000,000 in cash and $5,000,000 in gift cards redeemable at face value) from which members of the Damages Sub-Class are eligible to recover (id. ¶ 15.1.1);

9

- The Damages Sub-Class Fund will be allocated among the Sub-Class States based on a formula that reflects the number of Kmart stores in each Sub-Class State, and the Statutory Minimum Damages recoverable in each Sub-Class State (id. ¶ 15.5.2);

- For each qualifying visit to a Kmart store, a member of the Sub-Class may recover up to the Statutory Minimum Damages recoverable in the Sub-Class State in which he or she shopped, and the maximum number of qualifying visits for which a Sub-Class member may recover is two (id. ¶ 15.5.3.3);

- Kmart will pay damages in the amount of $10,000 each to the three original named plaintiffs, and $1,000 each to the six named plaintiffs of the Damages Sub-Class (id. ¶ 15.2);

- The majority of any funds remaining in the Damages Sub-Class Fund after the claims period will be given to specified non-profit entities that advocate for the rights of persons with disabilities (id. ¶ 15.6);

- Members of the Damages Sub-Class have the right to opt out of the damages provisions of the Settlement Agreement, but members of the Class and Sub-Class cannot opt out of the injunctive provisions (id. ¶ 16);

- In addition to releasing claims for injunctive relief under Title III, equivalent state statutes, and California law, Damages Sub-Class members will release claims for Statutory Minimum Damages under the laws of the seven Sub-Class States

through the end of the Term of the Agreement, but will not release claims for any other damages (id. ¶ 26.2);

- No member of the Nationwide Class will release damages claims with respect to the laws of any state other than those of the Sub-Class States (id. ¶ 26.2);

- Kmart has agreed to pay attorneys' fees up to the date of final approval in the amount of $3,250,000 and will pay Class Counsel additional reasonable fees in the future for work that they do during the Term of the Agreement implementing and assuring compliance with the Agreement (id. ¶ 20.2);[9]

- The Term of the Agreement will expire thirty days after the physical remediation of the last store is verified or the last dispute resolution process is concluded (id. ¶ 5); and

- The Settlement Agreement calls for this Court to retain continuing jurisdiction throughout the Term of the Agreement to interpret and enforce the Agreement (id. ¶ 35).

Two representatives of Kmart testified at the Fairness Hearing concerning the extensive efforts that Kmart has undertaken and is preparing to undertake to implement both the architectural and policy aspects of this Settlement. It is clear to the Court that Kmart takes its obligations seriously and is taking appropriate steps to ensure compliance with the Agreement.

Experienced attorneys representing both the Class and Kmart offered their opinion that this Settlement was fair, reasonable and adequate, as did all named plaintiffs of both the

---

[9]     Class Counsel has separately submitted a fee petition supporting its claim for this award.

Nationwide Class and the Damages Sub-Class. A representative of the National Disability Rights Network and an architect who is an expert in accessibility compliance both testified at the Fairness Hearing that, based on their experience in this area, the Settlement Agreement was fair, reasonable and adequate.

## DISCUSSION

**I.      The Damages Sub-Class Is Certified.**

This Court has preliminarily certified the Damages Sub-Class. Lucas v. Kmart, 2006 WL 722163, at * 6 (D. Colo. Mar. 22, 2006). Plaintiffs have moved for an order certifying this Sub-Class for settlement purposes only. For the reasons set forth in my March 22 Order, I will grant that motion and certify the Damages Sub-Class under F.R.C.P. 23(a) and both F.R.C.P. 23(b)(2) and F.R.C.P. 23(b)(3).

**II.     Notice Provided by the Parties Satisfies Rule 23 and Due Process.**

This Court previously approved the parties' proposed notice plan and the proposed forms of notice. Lucas, 234 F.R.D. at 695-97. The Court held that the requirements of due process and F.R.C.P. 23 would be satisfied if, on or before May 8, 2006, the parties executed a multi-faceted notice plan that is described in detail in the Court's Preliminary Approval Order. Id.

Since then, the parties satisfied all the elements of the notice plan approved by the Court in the Preliminary Approval Order. The parties sent out individual notice to more than 250,000 potential class members, including individuals who had contacted Class Counsel about the issues raised in this litigation. The parties undertook an expansive nationwide publication program that included both mainstream media and publications targeted at individuals who use wheelchairs or

scooters.  The parties notified almost 800 organizations focused on people with disabilities of the

pending settlement.  Kmart posted an in-store version of the notice in all of its stores and posted

a link to the notice on its website.  All of these steps were undertaken within the timeframe set

forth in the Preliminary Approval Order.

In fact, the parties undertook additional steps relating to notice above and beyond those

in the extensive plan approved by the Court.  For example, the notice was sent to email lists

focused on individuals with disabilities and posted on the websites of various groups focused on

individuals with disabilities.

The notice program implemented by the parties to this settlement goes above and beyond

that required by law.  For the reasons set forth in the Preliminary Approval Order, id. at 695-97,

the Court holds that the notice program implemented by the parties was the best notice

practicable under the circumstances and satisfied the requirements of due process and F.R.C.P.

23.

**III.     The Settlement is Fair, Reasonable and Adequate.**

In enacting the ADA, Congress provided specifically that "[w]here appropriate and to the

extent authorized by law, the use of alternative means of dispute resolution, including settlement

negotiations . . . is encouraged to resolve disputes arising under this chapter."  42 U.S.C.

§ 12212.  As the Seventh Circuit has noted, settlement is especially appropriate where

"voluntary compliance by the parties over an extended period will contribute significantly

toward ultimate achievement of statutory goals."  Metro. Hous. Dev. Corp. v. Village of

Arlington Heights, 616 F.2d 1006, 1014 (7th Cir. 1980).  Here, the parties are undertaking to

13

implement a comprehensive settlement over a period of years that will significantly promote the achievement of the goals of the ADA.

"The authority to approve a settlement of a class . . . action is committed to the sound discretion of the trial court." Jones v. Nuclear Pharmacy, Inc., 741 F.2d 322, 324 (10th Cir. 1984). Under F.R.C.P. 23(e)(1)(C), in considering whether to approve a class action settlement, a court should consider whether the settlement is "fair, reasonable, and adequate." In the Tenth Circuit, the following factors are to be analyzed in determining whether this standard is met:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002).

This Court has already preliminarily concluded that the Settlement Agreement satisfies these four prongs and that it and the allocation of the Damages Sub-Class Fund are fair, reasonable and adequate. Lucas, 234 F.R.D. at 693-95. The evidence submitted with the parties' Motion for Final Approval of Settlement Agreement and the testimony at the Fairness Hearing further support this conclusion. The Court therefore finds that the Settlement Agreement satisfies the four Rutter & Wilbanks prongs and is fair, reasonable and adequate.

## A.     The Agreement was Fairly and Honestly Negotiated.

There are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length.

First, the parties to this litigation have "vigorously advocated their respective positions throughout the pendency of the case." See Wilkerson v. Martin Marietta Corp., 171 F.R.D. 273, 284 (D. Colo. 1997). This case has been litigated over the course of six years, during which time both parties engaged in extensive written and deposition discovery, filed a number of contested discovery motions, and filed more than a dozen briefs related to class certification. The Settlement Agreement itself took six months to negotiate, and came only after several previous attempts at negotiating a settlement had failed. These negotiations involved multiple in-person meetings, during which both sides were represented by experienced counsel.

Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate and reasonable. See, e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 116 (2d Cir.), cert. denied sub nom., Leonardo's Pizza by the Slice, Inc. v. Wal-Mart Stores, Inc., 125 S. Ct. 2277 (2005) (a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" (quoting Manual for Complex Litigation, Third § 30.42 (1995))).

The fact that the parties did not discuss damages until they had made substantial progress on the injunctive issues, and did not discuss attorneys' fees until all other issues were virtually finalized, is also indicative of a fair and arm's-length process. See, e.g., Manual for Complex Litig., Fourth § 21.7 at 335 (2004) ("Separate negotiation of the class settlement before an agreement on fees is generally preferable.").

**B.      Serious Questions of Law and Fact Exist.**

Although it is not the role of the Court at this stage of the litigation to evaluate the merits,

Wilkerson, 171 F.R.D. at 284, it is clear that the parties could reasonably conclude that there are

serious questions of law and fact that exist such that they could significantly impact this case if it

were litigated.

For example, Kmart argued that plaintiffs' claims were discharged through its

bankruptcy.  Although the Court rejected that argument, Kmart could appeal this issue, argue

that plaintiffs' claims should have been dismissed, and potentially wipe out any successful result

that the plaintiffs might achieve.  Similarly, the Tenth Circuit granted interlocutory appeal of the

decision certifying the Nationwide Class in this case.  If this case were litigated, the Tenth

Circuit could reverse or modify this Court's class certification decision.

There is also a serious disagreement between the parties concerning the legal standards

applicable to stores built before January 26, 1993.  With respect to those stores, Kmart contends

that it was required to make only those changes that were "readily achievable" under 42 U.S.C.

§ 12182(b)(2)(A)(iv).  Plaintiffs disagree, arguing that, pursuant to 42 U.S.C. § 12183(a)(2),

Kmart was required to bring those stores into compliance with the Department of Justice

Standards for Accessible Design.  There are numerous contested factual issues that relate to this

point.

The question of access to merchandise on moveable displays was also hotly contested.

Plaintiffs took the position that all such merchandise was required to be on an accessible route of

at least 36 inches.  See Standards § 4.1.3(12)(b).  Defendants argued that the case law provided

that there was no such requirement.  See, e.g., Colorado Cross-Disability Coalition v. Too

(Delaware), Inc., 344 F. Supp. 2d 707, 715 (D. Colo. 2004); Lieber v. Macy's West, Inc., 80 F.

Supp. 2d 1065, 1077 (N.D. Cal. 1999).

There were thus numerous factual and legal questions yet to be addressed in this

litigation that could have had a serious impact on the results for either side.

**C.     The Value of an Immediate Recovery Outweighs the Mere Possibility of
         Future Relief after Protracted and Expensive Litigation.**

If this case were to be litigated, in all probability it would be many years before it would

be resolved.  The appeal of this Court's class certification decision alone could take a year.  And

if this Court's decision were upheld, then the parties could potentially be faced with surveying

each of Kmart's stores so that disputed factual issues could be resolved.

By contrast, the proposed Settlement Agreement provides the class with substantial,

guaranteed relief.  And the class will start to gain the benefits from this settlement in the near

future, instead of having to wait several more years for this litigation to be fought out to a

judgment.

Pursuant to the Settlement Agreement:

- Kmart will survey each of its stores in the United States, Puerto Rico, Guam, and
  the Virgin Islands using surveyors trained by Jim Terry, a nationally-known
  expert in ADA compliance.

- Architectural elements that are found through the surveys to be out of compliance
  with the Standards will be brought into compliance with the Standards, subject to

limited exceptions, to the extent that they relate to accessibility for people who use wheelchairs or scooters for mobility;

- As part of the settlement, Kmart has agreed not to assert the readily-achievable defense under the ADA during this process. See 42 U.S.C. § 12182(b)(2)(A)(iv).

- Kmart will put in place policies to ensure that its stores are accessible to class members, including, for example, making sure that an accessible check-out lane is open, that all merchandise on fixed displays is on an accessible path of travel, that Kmart employees are available to assist class members in accessing moveable apparel displays and furniture displays, and that restrooms and fitting rooms are accessible.

The Settlement Agreement also provides for substantial damages for members of the proposed Damages Sub-Class.  The settlement establishes a $13,000,000 fund from which members of the sub-class may recover.  In return, members of the sub-class are releasing only their claims for Statutory Minimum Damages and not their claims for actual damages. See, e.g., Bowling v. Pfizer, Inc., 143 F.R.D. 141, 170 (S.D. Ohio 1992) (approving class action settlement in part because of limited nature of damages release, such that class members retained most of their rights).

### D.    The Judgment of the Parties That the Settlement Is Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." Marcus v. Kansas Dept. of Revenue, 209 F. Supp. 2d 1179, 1183 (D. Kan. 2002). Here, the parties' counsel — among whom are attorneys with substantial experience in complex

18

class action litigation and disability class actions — unanimously support this settlement, as do all of the Named Plaintiffs.

### E.      Incentive Payments to Named Plaintiffs.

The Settlement provides for payment of $10,000 each to the original named plaintiffs of the Nationwide Class and of $1,000 each to the named plaintiffs for the Damages Sub-Class. Based on the testimony of Class Counsel concerning the effort these individuals undertook and their contributions to the litigation, these payments are entirely appropriate. See Cimarron Pipeline Constr., Inc. v. Nat'l Council on Comp. Ins., Nos. CIV 89-822-T & CIV 89-1186-T, 1993 WL 355466, at * 2 (W.D. Okla. June 8, 1993) (holding that payments of $10,000 to class representatives was appropriate in light of "their time and effort in asserting the interests of the Class, meeting discovery and other litigation responsibilities, and working with counsel to advance the interests of the Class").

### F.      Allocation of the Damages Sub-Class Fund.

The Court has also considered whether the distribution plan contained in the settlement is fair, reasonable, and adequate. See, e.g., In re Lorazepam & Clorazepate Antitrust Litig., 205 F.R.D. 369, 381 (D.D.C. 2002). The Court finds that it is.

"Allocation formulas . . . are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim. . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418,

429-30 (S.D.N.Y. 2001) (citations omitted); see also Maley v. Del Global Techs. Corp., 186 F.

Supp. 2d 358, 367 (S.D.N.Y. 2002) (same).

In this case, the settlement provides compensation for the release of claims for Statutory

Minimum Damages under the laws of the seven Sub-Class States.  Two factors affect the relative

strength and value of the claims among these states.

First, the Statutory Minimum Damages that may be recovered differ among the states,

from $50 in Colorado to $4,000 in California.

Second, the number of class members differs among the states.  States with a greater

number of class members who encountered barriers at Kmart stores should receive a larger

portion of the damages.  There is no way to determine the precise number of class members who

encountered barriers in each state.  As a reasonable approximation,[10] the parties have used the

number of Kmart stores in each state, based on the common-sense assumption that the greater

the number of Kmart stores in a state, the greater the number of class members who have

encountered barriers in that state.

The allocation formula agreed upon by the parties is as follows:  Each Sub-Class State is

assigned a "Factorial," which is the product of the number of Kmart stores (including any stores

that were open at any time during which damages are recoverable) in that state times the

Statutory Minimum Damages recoverable in the state.  For example, the California Factorial is

---

[10]    In a class action settlement, "damages need not be calculated with precision in
determining a plan of allocation for settlement proceeds; the only requirement is that the
allocation be fair and reasonable."  In re Veritas Software Corp. Sec. Litig., No. C-03-0283
MMC, 2005 WL 3096079, at *7 (N.D. Cal. Nov. 15, 2005).

520,000, which is the product of 130 (the number of California Kmart stores) and 4,000 (the

Statutory Minimum Damages recoverable in California).

The percentage of the Damages Sub-Class Fund allocated to a Sub-Class State is

determined by dividing that state's Factorial by the combined sum of the Factorials of all

Sub-Class States.

By allocating the Damages Sub-Class Fund based on the Statutory Minimum Damages

recoverable in each state, and by the number of Kmart stores in each state, the formula has a

"reasonable, rational basis," and is recommended by experienced, competent counsel.  Thus the

allocation formula satisfies F.R.C.P. 23.  See In re Am. Bank Note, 127 F. Supp. 2d at 429-30.

For the reasons set forth above, the Court holds that the settlement is fair, reasonable and

adequate.

## IV.    The Objection Is Overruled.

This Court received only one objection to the Settlement Agreement.  Marc Miller of

Bloomington, Illinois — an individual who does not, himself, use a wheelchair or scooter —

challenges the inclusion of individuals who may become disabled in the future in the settlement

classes.  He asserts: "[b]ecause individuals may become disabled in the future but are not

currently disabled, they may not understand that they will be included in the class" and that "it is

improper to settle claims for individuals in the future."  (Docket No. 224.)  He therefore asks that

the class definition for the Nationwide Class be rewritten to exclude individuals who become

disabled in the future.

Contrary to Mr. Miller's objection, it is both common and proper to include future class members in a class definition where, as here, the predominant relief is injunctive. For example, in Kilgo v. Bowman Transportation, Inc., 789 F.2d 859, 878 (11th Cir. 1986), the Eleventh Circuit affirmed the certification of a class of current and prospective female applicants for employment at a company. Similarly, in Comer v. Cisneros, 37 F.3d 775, 779 (2d Cir. 1994), the Second Circuit held that the plaintiffs could pursue a class action "on behalf of all former, current, and future minority residents of Buffalo, New York housing projects." See also United States Parole Comm'n v. Geraghty, 445 U.S. 388, 393 (1980); Crawford v. Gould, 56 F.3d 1162, 1163 (9th Cir. 1995); Neiberger v. Hawkins, 208 F.R.D. 301, 320 (D. Colo. 2002). Potential future class members are regularly included in classes in actions under the ADA. See, e.g., Neff v. Via Metro Transit Auth., 179 F.R.D. 185, 193 (W.D. Tex. 1998); Messier v. Southbury Training Sch., 183 F.R.D. 350, 356 (D. Conn. 1998); Siddiqi v. Regents of the Univ. of California, 2000 WL 33190435, at *4 (N.D. Cal. Sept. 6, 2000).

In many cases when relief is primarily injunctive, the relief is not individual but rather is obtained on behalf of an entire class. Relief relating to, for example, treatment of prisoners, hiring policies, school entrance tests, or architectural changes cannot be framed one way with respect to one potential class member and some other way with respect to another potential class member. Hence, classes seeking or obtaining primarily injunctive relief are certified as mandatory classes under F.R.C.P. 23(b)(2) — because the relief is "with respect to the class as a whole." In these circumstances, "unknown future class members should be properly considered and included as a part of the class." Neff, 179 F.R.D. at 193. Because, "while the identities of

22

the individuals involved may change, the nature of the harm and the basic parameters of the group affected remain constant." Bruce v. Christian, 113 F.R.D. 554, 557 (S.D.N.Y. 1987). Excluding future class members from classes would create "unnecessary harm and repetitive litigation." Dixon v. Bowen, 673 F. Supp. 123, 127 (S.D.N.Y. 1987).

The parties submit, and the Court agrees, that the rationale for including future class members in class definitions is particularly strong in the context of ADA public accommodation cases such as this one. Because the architectural and design changes sought in most public accommodation cases cannot be made instantaneously, a public accommodation settlement usually must provide a period of time over which alterations to the relevant public accommodations are to be made. See, e.g., Colorado Cross-Disability Coalition v. Taco Bell Corp., Civil Action No. 97-B-2135 (D. Colo.); Farrar-Kuhn v. Conoco, Inc., Civil Action No. 99-MK-2086 (D. Colo.).

Consistent with these other settlements, the Settlement Agreement here contains carefully negotiated terms setting forth, among other terms, an eight-year plan to survey and remediate more than 1,400 stores. The Settlement Agreement, in turn, resolves claims under various accessibility laws. Under Mr. Miller's approach, however, a newly disabled individual would be able to bring a claim alleging that Kmart was violating accessibility laws, even while Kmart was acting in accordance with a court-approved class action settlement resolving claims under those very laws. In other words, at the same time as receiving all the benefits obtained in the settlement, he or she could seek injunctive relief that would functionally be challenging the very terms of the settlement.

To permit such claims during the Term of the Settlement Agreement would threaten its very foundation.  See Newberg on Class Actions § 3:7 (rev. 4th ed. supp. 2006) ("Inclusion of future class members within a class, when otherwise appropriate under Rule 23(a) tests, will greatly enhance the effectiveness of the final judgment.").  Moreover, to bar classes in ADA public accommodation lawsuits from including future members would negatively impact the ability of parties to negotiate effective public accommodation settlements.  Defendants would surely be hesitant to enter into settlements if they were faced with the possibility that the releases — and thus the stability — they obtain in return for the commitments they undertake in settlements could be disrupted or challenged by any newly disabled individual who decides to pursue a lawsuit.

Miller also objects that he "cannot determine with certainty if [he is] a member of the subclass entitled to a monetary award."  (Id.)  This is easily resolved:  because he does not currently use a wheelchair or scooter, he is not entitled to a monetary award under the Settlement Agreement.

If Mr. Miller becomes disabled in the future, then like any other present or future class member, he will be entitled to pursue any claims for actual damages that he might have.  The only claim that he might not be able to pursue would be a claim for Statutory Minimum Damages, if he is shopping in a Kmart in a state providing for such damages.  The Settlement Agreement bars claims for Statutory Minimum Damages during the Term of the Agreement to the extent that such claims arise out of or relate to actions, conduct or conditions at Kmart stores that are in compliance with the Settlement Agreement.  That release is derived directly from, and

24

is incidental to, the substantial injunctive relief provided by the settlement.  It simply (and properly) provides that Kmart will not be exposed to a form of damages that do not require actual harm and that are intended to be "penal" in nature, see, e.g., Koire v. Metro Car Wash, 707 P.2d 195, 200 (Cal. 1985), while acting in compliance with the terms of a court-approved injunctive settlement.[11]  Moreover, the release does not differentiate between those who are presently disabled and those who might become disabled during the Term of the Agreement.[12]

Mr. Miller's objection is overruled.  Indeed, the fact that there was only a single objection, even after the massive notice program that was undertaken, provides further support for the fairness of the settlement.  See, e.g., Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval"); Newberg on Class Actions § 11:41 (rev. 4th ed. supp. 2006) (Among the considerations favoring approval is "[t]hat the number of objectors or interests they represent is not large when compared to the class as a whole.").

## V.   Class and Sub-Class Members will be Permanently Enjoined from Asserting Released Claims.

In its Preliminary Approval Order, the Court preliminarily enjoined members of the class and the sub-class from pursuing any of the claims to be released pursuant to the Settlement

---

[11]   This is a completely different situation than that presented in Molski v. Gleich, 318 F.3d 937 (9th Cir. 2003), where a settlement purported to release statutory minimum damages claims that accrued prior to the settlement for minimal consideration.

[12]   For this reason, among many others, the Settlement Agreement does not raise the issues presented by Amchem Prods., Inc. v. Windsor, 521 U.S. 591 (1997).

25

Agreement. Lucas, 234 F.R.D. at 697-98. The parties now ask the Court to make that injunction permanent. The Court will do so.

In addition to the Court's inherent power, this Court "may issue all writs necessary or appropriate in aid of [its] respective jurisdictions and agreeable to the usages and principles of law" pursuant to the All Writs Act. 28 U.S.C. § 1651(a). Numerous courts have held that under the All Writs Act, a court presiding over a class action settlement may enjoin class members from bringing related litigation in other courts. See, e.g., Hillman v. Webley, 115 F.3d 1461, 1469 (10th Cir. 1997) (in connection with class action settlement, "[t]he district court undoubtedly had the authority under the All Writs Act to enjoin parties before it from pursuing conflicting litigation . . ."); In re VMS Sec. Litig., 103 F.3d 1317, 1324 (7th Cir. 1996) ("in the context of complex class action litigation, a federal district court may appropriately use the All Writs Act to . . . enjoin the prosecution of subsequent state court claims . . ."); see also 7B Charles Alan Wright, et al., Federal Practice and Procedure § 1798.1 ("an injunction . . . to protect the court's power . . . may be particularly appropriate once a settlement has been reached and judgment entered as part of that settlement").

The Court believes that it is particularly appropriate to issue an injunction in this case because the settlement has a term of approximately seven and a half years during which the Court will continue to retain jurisdiction over this matter. Therefore, because the Court finds that it would aid in the protection of its jurisdiction and is necessary in order to effectuate this settlement, the Court hereby permanently enjoins members of the Nationwide Class and the Damages Sub-Class from asserting or pursuing:

1.      With respect to conduct or conditions preceding the final approval of the settlement:

(a)     Claims seeking injunctive relief relating in any way to the accessibility of Kmart stores to persons who use wheelchairs or scooters under Title III of the Americans with Disabilities Act, Cal. Code Regs., Title 24, and any other provision of California law to the extent it grants a right of action for alleged violations of the foregoing, and any state or local statutory, administrative, regulatory or code provisions that either (i) directly incorporate Title III of the Americans with Disabilities Act or any of the rules or regulations promulgated thereunder or (ii) set forth standards or obligations coterminous with or equivalent to Title III of the Americans with Disabilities Act or any of the rules or regulations promulgated thereunder;

(b)     Claims for Statutory Minimum Damages relating in any way to the accessibility of Kmart stores or closed Kmart stores to persons who use wheelchairs or scooters by operation of or pursuant to the following state statutes or codes: California – Cal. Civil Code §§ 52, 54.3; Colorado – C.R.S. § 24-34-602; Hawaii – Hawaii Statutes § 489-7.5; Massachusetts – M.G.L.A. ch. 272 § 98; New York – N.Y. Civ. R. §§ 40-c, 40-d, N.Y. Exec. § 296(2)(a); Oregon – O.R.S. § 659A.885; and Texas – Tex. Hum. Res. Code §§ 121.003, 121.004, and any other statute, codes or laws (as previously or presently codified, or as they may be codified in the future) providing for minimum damages in a specified amount.

2.      With respect to conduct or conditions during the Term of the Agreement:

    (a)    Claims seeking injunctive relief relating in any way to the accessibility of Kmart stores to persons who use wheelchairs or scooters under Title III of the Americans with Disabilities Act, Cal. Code Regs., Title 24, and any other provision of California law to the extent it grants a right of action for alleged violations of the foregoing, and any state or local statutory, administrative, regulatory or code provisions that either (i) directly incorporate Title III of the Americans with Disabilities Act or any of the rules or regulations promulgated thereunder or (ii) set forth standards or obligations coterminous with or equivalent to Title III of the Americans with Disabilities Act or any of the rules or regulations promulgated thereunder, to the extent that such claims arise out of or relate to actions, omissions, or conduct (including physical conditions at Kmart stores) that are in compliance with the terms of the Settlement Agreement;

    (b)    Claims for Statutory Minimum Damages relating in any way to the accessibility of Kmart stores or closed Kmart stores to persons who use wheelchairs or scooters by operation of or pursuant to the following state statutes or codes: California – Cal. Civil Code §§ 52, 54.3; Colorado – C.R.S. § 24-34-602; Hawaii – Hawaii Statutes § 489-7.5; Massachusetts – M.G.L.A. ch. 272 § 98; New York – N.Y. Civ. R. §§ 40-c, 40-d, N.Y. Exec. § 296(2)(a); Oregon – O.R.S. § 659A.885; and Texas – Tex. Hum. Res. Code §§ 121.003, 121.004, and any other statute, codes or laws (as previously or presently codified, or as they may be

codified in the future) providing for minimum damages in a specified amount, to the extent that such claims arise out of or relate to actions, omissions, or conduct (including physical conditions at Kmart stores) that are in compliance with the terms of the Settlement Agreement.

## VI.    Order

For the reasons set forth above, this Court GRANTS the parties' Joint Motion for Final Approval of Settlement Agreement and ORDERS as follows:

A.    The damages sub-class is CERTIFIED under F.R.C.P. 23(a) and both F.R.C.P. 23(b)(2) and F.R.C.P. 23(b)(3);

B.    Mr. Miller's objection is OVERRULED;

C.    The Settlement Agreement, including all of its terms, conditions and releases, is APPROVED; and

D.    The members of the class and the sub-class are PERMANENTLY ENJOINED from bringing any of the claims set forth in Section V above.

As requested by the parties, this Court retains exclusive jurisdiction over this matter for the purpose of interpreting and enforcing the Settlement Agreement.

Dated: July 27, 2006

_____
SENIOR U.S. DISTRICT COURT JUDGE